PEOPLE ex rel. HOWARD v. WENDE, County Clerk.

(Supreme Court, Special Term, Erie County.)

1. COUNTY SUPERVISORS—VACANCIES—APPOINTMENT—TERM OF OFFICE.

Under Const. art. 10, § 5, providing that no person appointed to fill a vacancy in an elective office shall hold the same longer than the commencement of the political year next succeeding the first annual election after the filling of the vacancy, a person appointed to fill the office of county supervisor preceding the general election of that year holds the same only until the expiration of the year, notwithstanding a provision in the charter of the city in which the appointment was made that such appointee's term of office "shall continue until and including the next 31st day of December in an odd-numbered year."

2. SAME—CONSTITUTIONAL LAW.

> Const. art. 12, § 3, providing for the election of county supervisors and other officials in odd-numbered years, but which excepts from its terms officials elected to fill vacancies, excepts from the general design of the constitution, to divorce municipal from state elections, all officials holding positions by virtue of appointments.

3. SAME—CITY CHARTER—VALIDITY.

> Although Buffalo Charter, § 374 (Laws 1891, c. 105), in relation to the term of persons appointed to fill vacancies in the office of county supervisor, is in contravention of Const. art. 10, § 5, it is not nugatory, and appointments to fill vacancies thereunder continue until the expiration of the constitutional limit.

Application for mandamus, on relation of Frederick Howard against Otto Wende, as county clerk of Erie county, to compel defendant to receive and file relator's certificate of nomination, and place his name on the official ballot for the office of·county supervisor. Peremptory writ granted.

Tracy C. Becker, for relator.

John Fisher, opposed.

SPRING, J.· On the 31st day of March, 1898, Thomas Tilson, a supervisor of the Twenty-Fourth ward of this city, died, thus causing a vacancy in that office. Pursuant to law, a joint meeting of the board of aldermen and board of councilmen of the city, on the 7th day of April, 1898, appointed Herman C. Cleveland to fill this vacancy; and the appointee assumed the duties thereof, and is now occupying the position, by virtue of this appointment. In the designation of the appointment the official incumbency of Cleveland was to continue uninterruptedly until the 31st day of December, 1899. The warrant for this action of the common council is section 374 of the charter of the city of Buffalo, which, after providing the manner of filling a vacancy of this kind, adds:

"The term of the person so elected to fill such vacancy shall continue until and including the next 31st day of December of an odd-numbered year, and until his successor shall have been elected and qualified." Laws 1891, c. 105.

The relator in this proceeding presented to the county clerk of this county a certificate signed by more than 100 duly-qualified voters of the said Twenty-Fourth ward of said city, certifying that he has been nominated for the office of supervisor to fill the position made vacant by the death of said Tilson, and requested the clerk to file such certificate. The certificate complies in all respects with section 57 of the election law, and is proper in form, and shows that the relator has been duly nominated by a political organization of said city. The county clerk refused to file this certificate, asserting there was no vacancy, and alleging as the authority for this declination that portion of the charter above quoted. This section of the charter in and of itself, if it is to be taken as the law to determine this question, amply vindicates the contention of the county clerk in this case. The claim of the relator is that this provision of the charter is in violation of the constitution of this state. Section 26 of article 3 of the constitution provides that a supervisor is an elective officer. Section 5 of article 10 of the constitution contains the following:

"The legislature shall provide for filling vacancies in office, and in case of elective officers, no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the filling of the vacancy."

The succeeding section provides that the political year shall begin in the 1st day of January. These two sections construed together apparently dispose of this case; that is, the supervisor of the Twenty-Fourth ward is a county official as contradistinguished from an officer whose sphere of duty is wholly within the city; as the board of supervisors of this county is not confined to the city of Buffalo, but embraces the entire county. It admits of no dispute that this official is an elective officer, as defined in the constitution. The constitution is explicit in providing that a person appointed to fill a vacancy in an elective office shall only hold his office by virtue of such appointment until the end of the year after the first election ensuing subsequent to his appointment. The section of the charter referred to is clearly in contravention to this explicit section of the constitution, and, of course, must yield to it, unless there is some other provision that will uphold the provision of the charter.

It is contended on behalf of the defendant that the section quoted limiting the term of the appointee as above stated is not applicable to this case; that it was intended in the new constitution to separate municipal elections from general elections, and, for the purpose of making that plan effective, supervisors were to be elected in odd-numbered years; and, this vacancy occurring in a year of an even number, that it necessarily results in continuing the term of the present incumbent during the entire year of 1899, as no election is provided for in the present year. Section 3 of article 12, in providing for the election of supervisors and other officials in an odd-numbered year, expressly excepts from its terms officials elected to fill vacancies. There could be no object for this exception, unless it was to exempt from the general design to divorce municipal from state elections every official who holds his position by virtue of an appointment to fill a vacancy; that is, the statute providing for the election of certain officers in an odd-numbered year relates solely to an election by the people. And, by the very section referred to, it is apparent there was no intention to restrict or militate against that provision of the constitution providing that appointees should hold their term only until the last day of the year of their appointment, providing such appointment preceded the general election of that year. This construction is in harmony with the general trend of political rights in this state and in the United States; that is, elective officers are supposed to hold their positions by virtue of the will of the people, and not of any appointing power. That interpretation of any constitutional provision or any enactment therefore will be sustained which is in consonance with this basic principle of self-government. Where a person is appointed to fill a political position, the incumbency of which depends upon the electors, the official term should be restricted as far as possible, in order that the qualified voters may elect in the ordinary way the incumbent of the office.

53 N.Y.S.—66

In the brief time I have had, I have examined the various authorities produced on this proceeding. I find nothing in conflict with the position I have taken. This construction does not render nugatory the provision of the charter for filling vacancies. The appointee will hold, in any event, so far as the length of term is within the constitutional limit. And, beyond that, section 4 of chapter 6 of the general election law of 1896 specifically provides for the filling of vacancies, and would uphold the present appointment for the present year. This section, and section 31 of the public officers' law (chapter 681, Laws 1892), are all in harmony with the general scheme, as to filling vacancies in elective offices, that the term of the appointees shall terminate at the end of the year after the first election following the date of the appointment.

A peremptory writ will be issued requiring the defendant forthwith to receive and file the certificate of nomination, and also to place petitioner's name on the official ballots, to the end that he may be voted for at the ensuing election to be held November 8, 1898.